IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RUTH WHEELER, | ) | CASE NO. 1:12-cv-00777 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| MICHAEL J.ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |

Plaintiff Ruth Wheeler ("Plaintiff" or "Wheeler") seeks judicial review of the final

decision of Defendant Commissioner of Social Security ("Commissioner") denying her

applications for social security disability benefits.  Doc. 1.  This Court has jurisdiction pursuant

to 42 U.S.C. § 405(g).  This matter has been referred to the undersigned Magistrate Judge for a

Report and Recommendation pursuant to Local Rule 72.2(b)(1).

For the reasons stated below, the undersigned recommends that the Commissioner's

decision be **AFFIRMED**.

## I.  Procedural History

Wheeler filed her applications for Disability Insurance Benefits and Supplemental

Security Income on July 10, 2009.  Tr. 71-74, 129-135, 136-138.  She alleged a disability onset

date of April 21, 2009 (Tr. 129, 136) based on bipolar disorder and severe anxiety.[1]  Tr. 75, 79,

*84*, 86, 155.  After initial denial by the state agency (Tr. 71-72, 75-81), and denial on

reconsideration (Tr. 73-74, 84-88), Wheeler requested a hearing (Tr. 91-93), and an

---

[1] During the administrative hearing, Wheeler testified that she also suffered from irritable bowel syndrome, diverticulitis, COPD and emphysema, but those conditions are not at issue on this appeal.  Tr. 30.

administrative hearing was held before Administrative Law Judge Peter Beekman ("ALJ") on July 19, 2011. Tr. 26-61.

In his September 1, 2011, decision (Tr. 8-25), the ALJ determined that Wheeler had not been under a disability from April 21, 2009, through the date of the ALJ's decision. Tr. 21. Wheeler requested review of the ALJ's decision by the Appeals Council. Tr. 7. On February 3, 2012, the Appeals Council denied Wheeler's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. 1-6.

## II. Evidence

### A.    Personal and Vocational Evidence

Plaintiff was born on November 12, 1955. Tr. 129, 136. At the time of the hearing she was 55 years old. Tr. 29. She is divorced and lives alone in an apartment with her cat. Tr. 30-31, 258. Wheeler has one daughter who lives with her father. Tr. 258. Wheeler completed college and worked in the past as an RN ("registered nurse"), a group home aide, greenhouse worker, and cashier. Tr. 29, 161, 163.

### B.    Medical Evidence

#### 1.    Treating physician's reports

Wheeler's treating psychiatrist, Dr. Lorraine Christian, M.D., began treating Plaintiff in 2004 and completed a number of different reports regarding Plaintiff's mental condition and its impact on her ability to work. Tr. 258, 283.

a. *August 28, 2009, Mental Functional Capacity Assessment*

On August 28, 2009, Dr. Christian completed a Mental Functional Capacity Assessment.

Tr. 312-314.  Dr. Christian's notes from her mental status exam of Plaintiff state that Wheeler:

> . . . is anxious, fearful depressed.  Need constant reassurance about getting better.
> Alert, oriented coherent and relevant.  Well groomed. Reports no psychotic sxs.
> Easily distracted.  Restless and worried manner.  No intellectual impaired.  Insight
> & judgment limited.  Is quite unstable at this time.  Unable to concentrate and
> focus.  Is not capable of working.

Tr. 313.

She rated Plaintiff as markedly limited in her ability to: maintain attention and

concentration for extended periods; complete a normal workday and workweek without

interruptions from psychologically based symptoms and to perform at a consistent pace without

an unreasonable number and length of rest periods; respond appropriately to changes in the work

setting; and travel in unfamiliar places or use public transportation.  Tr. 312.

b. *April 6, 2010, Mental Status Questionnaire*

On April 6, 2010, Dr. Christian completed a Mental Status Questionnaire.  Tr. 283-285.

She described Plaintiff's mental status at that time as follows: she was well groomed; her flow of

conversation was within normal limits ("WNL"); her mood and affect were euthymic, normal

affectional range; she was moderately anxious; she had no thinking disorders; her orientation

was WNL; because she was no longer psychotic, her cognitive functioning (concentration, long

and short-term memory, abstract reasoning, fund of information, range of intelligence) was

WNL; and, because her psychosis had resolved, her insight and judgment was WNL.  Tr. 283.

Dr. Christian indicated that, while Plaintiff was still not at her pre-illness baseline, she

was better able to remember, understand and follow directions.  Tr. 284.  Dr. Christian indicated

that Plaintiff's ability to maintain attention and her ability to sustain concentration, persist at tasks, and complete them in a timely fashion were impaired, but Dr. Christian did not offer an opinion as to the extent of those impairments.  Tr. 284.  Dr. Christian indicated that "when [Plaintiff is] ill [she] is paranoid and unable to leave house or interact with other."  Tr. 284. Further, she opined that Plaintiff "would not work well at this time in any setting."  Tr. 284.

### c. *February 16, 2011, Mental Functional Capacity Assessment*

In February 15, 2011, treatment notes, Dr. Christian stated that she was of the opinion that Plaintiff could not work since her symptoms "wax and wane."  Tr. 332.  A day later, on February 16, 2011, Dr. Christian completed a Mental Functional Capacity Assessment wherein she noted that Plaintiff's condition was "currently improved with med."[2]  Tr. 322. Notwithstanding this notation, Dr. Christian rated Plaintiff's ability to make simple work-related decisions as being more impaired than it had been on August 28, 2009, i.e., markedly rather than only moderately impaired.  Tr. 312, 322.  Further, Wheeler showed no improvement in certain areas since the August 28, 2009, Assessment, i.e., as in the August 28, 2009, Assessment, Dr. Christian rated Plaintiff as markedly limited in her ability to maintain attention and concentration for extended periods and complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  Tr. 322.  Dr. Christian did reflect some improvement since the August 28, 2009, Assessment, i.e., Dr. Christian indicated that Plaintiff's ability to respond appropriately to changes in the work setting and travel in unfamiliar places or use public transportation was moderately, not markedly, impaired.  Tr. 312, 322.

---

[2] In contrast to the August 28, 2009, Mental Functional Capacity Assessment (Tr. 313), Dr. Christian did not include mental status exam notes in the February 16, 2011, Mental Functional Capacity Assessment (Tr. 322).

d.  *May 20, 2011, Medical Source Statement of Ability to do Work-Related Activities*

On May 20, 2011, Dr. Christian completed a Medical Source Statement of Ability to do Work-Related Activities ("May 20, 2011, Statement").  Tr. 394-396.  In giving her opinion regarding Plaintiff's limitations, Dr. Christian indicated that the earliest date to which her description of Plaintiff's limitations applied was March 19, 2004.  Tr. 394.

She opined that Plaintiff's ability to understand, remember, and carry out instructions was, with the exception of her ability to make judgments on simple work–related decisions being moderately impaired, slightly impaired.  Tr. 394.

Dr. Christian also opined that that Plaintiff's ability to respond appropriately to supervision, co-workers, and work pressures was impaired.  Tr. 395.  More particularly, Dr. Christian opined that Plaintiff's ability to interact appropriately with co-workers was slightly impaired; her ability to interact appropriately with the public was moderately impaired; and her ability to interact appropriately with supervisor(s), respond appropriately to work pressures in a usual work setting, and respond appropriately to changes in a routine work setting was extremely impaired.  Tr. 395.  Dr. Christian indicated that Plaintiff's "psychotic diagnosis" supported her assessment regarding Plaintiff's ability to respond appropriately to supervision, co-workers, and work pressures.  Tr. 395.

Dr. Christian also opined that Plaintiff's impairment affected her ability to concentrate and made it difficult for Plaintiff to stay focused.  Tr. 395.  Also, Dr. Christian opined that Plaintiff's impairment affected her decision making ability and caused her to make mistakes.  Tr. 395.

Dr. Christian rated the severity of Plaintiff's impairment in different areas.  Tr. 395.  She indicated that Plaintiff had no limitations in her activities of daily living; moderate limitations in maintaining social functioning; and constant deficiencies of concentration, persistence or pace, resulting in failure to complete tasks in a timely manner.  Tr. 395.  She also indicated that Plaintiff had continual "episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors)."  Tr. 395.

Dr. Christian indicated that, if benefits were awarded to Plaintiff, she would be able to manage the benefits herself.  Tr. 396.  Dr. Christian assessed Plaintiff's then current GAF to be 80.[3]  Tr. 396.  Dr. Christian also indicated that Plaintiff's highest GAF in the past year had been 80.  Tr. 396.

e.  *July 6, 2011, Medical Source Statement of Ability to do Work-Related Activities*

Less than two months later, on July 6, 2011, Dr. Christian completed another Medical Source Statement of Ability to do Work-Related Activities ("July 6, 2011, Statement").  Tr. 397-399.  In giving her opinion regarding Plaintiff's limitations, Dr. Christian again indicated that the earliest date to which her description of Plaintiff's limitations applied was March 19, 2004.  Tr. 397.

In contrast to her May 20, 2011, Statement, Dr. Christian opined that Plaintiff was markedly, rather than only slightly, impaired in her ability to understand and remember detailed instructions and carry out detailed instructions.  Tr. 394, 397.  As she had opined in her May 20,

---

[3] GAF considers psychological, social and occupational functioning on a hypothetical continuum of mental health illnesses.  *See* American Psychiatric Association: *Diagnostic & Statistical Manual of Mental Health Disorders*, Fourth Edition, Text Revision.  Washington, DC, American Psychiatric Association, 2000 ("DSM-IV-TR"), at 34. A GAF score between 71 and 80 indicates that, "[i]f symptoms are present, they are transient and expectable reactions to psychological stressors (e.g., difficulty concentrating after family argument); no more than slight impairment in social, occupational, or school functioning (e.g., temporarily falling behind in schoolwork)."  DSM-IV-TR, at 34.

2011, Statement, Dr. Christian again opined that Plaintiff's ability to understand and remember short, simple instructions and carry out short, simple instructions was only slightly impaired and her ability to make judgments on simple work–related decisions was moderately impaired.  Tr. 397.

Dr. Christian also opined that Plaintiff's ability to respond appropriately to supervision, co-workers, and work pressures was impaired.  Tr. 398.  Her assessment of the degree of impairment was similar to her May 20, 2011, Statement, i.e., Dr. Christian opined that Plaintiff's ability to interact appropriately with co-workers was only slightly impaired; her ability to interact appropriately with the public was moderately impaired; and her ability to interact appropriately with supervisor(s), respond appropriately to work pressures in a usual work setting, and respond appropriately to changes in a routine work setting was extremely impaired.  Tr. 398.  Dr. Christian indicated that Plaintiff's "psychotic diagnosis – bipolar disorder" supported her assessment regarding Plaintiff's ability to respond appropriately to supervision, co-workers, and work pressures.  Tr. 398.

In addition to opining that Plaintiff's impairment affected her ability to concentrate and stay focused and her ability to make decisions and not make mistakes, Dr. Christian added that Plaintiff's impairment caused Plaintiff to experience auditory hallucinations and mood swings. Tr. 398.

Dr. Christian's July 6, 2011, ratings of the severity of Plaintiff's impairment in different areas were the same as the ratings contained in her May 20, 2011, Statement, i.e., she indicated that Plaintiff had no limitations in her activities of daily living; moderate limitations in maintaining social functioning; and constant deficiencies of concentration, persistence or pace, resulting in failure to complete tasks in a timely manner.  Tr. 398.  She also indicated that

Plaintiff had continual "episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors)."  Tr. 398.

Dr. Christian again indicated that, if benefits were awarded to Plaintiff, she would be able to manage the benefits herself.  Tr. 399.  In contrast to the May 20, 2011, GAF scores, Dr. Christian assessed Plaintiff's then current GAF to be 60.[4]  Tr. 399.  Further, she indicated that the Plaintiff's highest GAF in the past year had been 30-40.[5]  Tr. 399.

## 2.  Consultative physician's report

On December 15, 2009, psychologist Dr. Thomas F. Zeck, Ph.D., conducted a consultative examination.  Tr. 258-263.  Wheeler indicated that she was divorced and that her marriage had been an abusive relationship, both physically and mentally.  Tr. 258.  She reported having had two prior in-patient hospitalizations for her mental condition, once in 1990 and once in 2004.  Tr. 258.  She reported being a patient at Nord Center ("Nord") since her 2004 hospital admission.  Tr. 258.  She indicated that, since March 2009, she had gone through numerous medication changes but was finally able to find medication that was helpful in stabilizing her. Tr. 259.

Wheeler reported that, although she had been depressed in the past, she was no longer depressed.  Tr. 260.  She reported that she was not feeling hopeless and Dr. Zeck opined that she

---

[4]A GAF score between 51 and 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning.  *Id.*

[5] A GAF score between 21 and 30 indicates "behavior is considerably influenced by delusions or hallucinations or serious impairment in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) or inability to function in almost all areas (e.g. stays in bed all day; no job, home, or friends)."  A GAF score between 31 and 40 indicates "some impairment in reality testing or communication (e.g., speech at times illogical, obscure, or irrelevant) or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)."

did not appear hopeless.  Tr. 260.  Wheeler stated that, at times, she gets worked up and anxious and tense about the way her life is going.  Tr. 260.  She reported a reduced sense of self and stated that, if she was working and contributing, she would feel much better.  Tr. 260.

Wheeler exhibited a very rapid and excitable speech pattern.  Tr. 260.  She stated that she worries about her daughter, her finances, her friends and what the future will hold for her and how she will cope in the future.  Tr. 260. Wheeler denied any hallucinations, delusions or paranoia.  Tr. 261.

Wheeler reported living alone and that she enjoys reading and classical music.  Tr. 261. If her medication is not causing her to feel dizzy, she will go on walks.  Tr. 261.  She reported having four good friends, one of whom is her daughter.[6]  Tr. 261.

Dr. Zeck opined that Wheeler was not depressed but, based on her very rapid speech pattern and tendency to ramble and talk incessantly, he opined that she appeared to be rather anxious.  Tr. 262.  He opined that she likely has post traumatic stress disorder issues as a result of her abusive marriage.  Tr. 262.  He noted that Wheeler lives alone and, based on her statements, she can function well.  Tr. 262.  Wheeler was average in her abstract thinking and logical thinking abilities and low average in her general comprehension abilities.  Tr. 262.  She was borderline in her concentration, rote memory and immediate recall.  Tr. 262.  Dr. Zeck diagnosed Wheeler with generalized anxiety disorder, bipolar disorder (previously diagnosed) and post traumatic stress disorder.  Tr. 262.  He assessed a GAF score of 55.[7]  Tr. 262.

In assessing Wheeler's work-related abilities, Dr. Zeck opined that: (1) Wheeler's mental ability to relate to others including fellow workers and supervisors is moderately impaired by her

---

[6] At the time of the consultative examination, Wheeler's daughter was 17 years of age.  Tr. 258.

[7] A GAF score between 51 and 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning.  *Id.*

anxiety and her inability to concentrate and remember very well – there is a likelihood that complicated or detailed instructions would be difficult for Wheeler to follow; (2) Wheeler's ability to understand, remember, and follow instructions is mildly impaired; (3) Wheeler's ability to maintain attention, concentration, persistence and pace to perform simple repetitive tasks once she learns the task is not impaired; and (4) Wheeler's mental ability to withstand the stress and pressure associated with day-to-day work activity is at least moderately impaired.  Tr. 262-263.

### 3. State agency reviewing physicians' reports

On December 23, 2009, Dr. Roy Shapiro, Ph.D., completed a Mental RFC Assessment (Tr. 264-267) and a Psychiatric Review Technique (Tr. 268-281).  In the Psychiatric Review Technique, Dr. Shapiro opined that Wheeler's ability to maintain activities of daily living is mildly limited, her ability to maintain social functioning is moderately limited, and her ability to maintain concentration, persistence or pace is moderately limited.  Tr. 278.  He indicated that she has experienced one or two episodes of decompensation.  Tr. 278.

In the Mental RFC, Dr. Shapiro opined that Wheeler is moderately limited in 7 out of the 20 rated categories: ability to understand and remember detailed instructions; ability to carry out detailed instructions; ability to maintain attention and concentration for extended periods; ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; ability to interact appropriately with the general public; ability to accept instructions and respond appropriately to criticism from supervisors; and ability to respond appropriately to changes in the work setting.  Tr. 264-265.  In the other 13 categories, Dr. Shapiro opined that Wheeler is not significantly limited.  Tr. 264-265.  Following his assessment of her functional limitations, Dr. Shapiro concluded that Wheeler "may have some moderate difficulties with

interaction and task completion" and "would appear to do best with simple routine positions that are static and unpressured."  Tr. 266.

On April 13, 2010, upon reconsideration, Dr. Alice Chambly, Psy.D., affirmed Dr. Shapiro's December 23, 2009, assessment as written.  Tr. 311.  In reaching her conclusion, she gave only limited weight to Plaintiff's treating psychiatrist's opinion that Wheeler could not work well in any setting because Dr. Chambly found that opinion not supported by the psychiatrist's own objective mental status evidence.  Tr. 311.

**C.     Testimonial Evidence**

   **1.        Wheeler's Testimony**

Wheeler was represented by counsel and testified at the administrative hearing.  Tr. 29-44.  She indicated that she had been an RN for approximately 25 years and that her nursing specialty was geriatrics.  Tr. 29.  As an RN she was a supervisor.  Tr. 44.  She reported having seven jobs over five years and that she had made mistakes because of her inability to focus, follow directions and because she would become tired from working long hours.  Tr. 44.  She stopped working in the nursing profession about five or six years prior to the hearing.  Tr. 29.  After leaving the nursing profession, Wheeler continued to work as a greenhouse worker, cashier and aide in a group home.  Tr. 29.  In her non-nursing jobs, she indicated that she did not have any problems with her supervisors.  Tr. 44.

Her last day of employment was on April 21, 2009, her alleged disability onset date.[8]  Tr. 29-30.  She indicated that her medications caused bad side effects and she had a meltdown; she could not see, drive, walk or get out of her house.  Tr. 30.  She stated she was hospitalized for about a month in attempt to stabilize her medications.  Tr. 30.  She has not returned to work

---

[8] She did perform periodic housecleaning services for an ex-neighbor after April 21, 2009, but it was not full-time and the pay was minimal.  Tr. 42-43.

because she does not think that she can handle the stress of having to get there and deal with people and work every day.  Tr. 41-42.

She lives alone in an apartment with her cat.  Tr. 30-31.  She has strong support from friends.  Tr.  31-32, 42.  She sold her car because she could not afford it and because she could not drive it.  Tr. 31.  She enjoys classical music, gardening, nature and reading.  Tr. 31.  She described herself as a bookworm and stated that she likes to read a lot.  Tr. 32-33.  She mostly enjoys reading "deep stuff" like spiritual books and usually does not read "junk." Tr. 32-34.  However, she also indicated that there are days when she is unable to read because she cannot concentrate.  Tr. 39.  She does word search puzzles.  Tr. 35.  She noted that she tries to keep "the old brain matter stimulated."  Tr. 35-36.  She uses a computer for emails and Facebook.  Tr. 36.  She rarely watches television programs.  Tr. 36.  Even though she has a hard time tracking movies from beginning to end, she stated that she does watch movies that she rents from the library.  Tr. 37.  She enjoys cooking but usually cooks simple dishes.  Tr. 37-38.

When describing her mental impairment, she indicated that she has manic depressive tendencies and, approximately two or three times per month, she experiences panic attacks.  Tr. 34-35.  When she experiences a panic attack, she has to take extra medicine to calm herself down but indicated that her anxiety level still remains high.  Tr. 34-35.  She has problems focusing and concentrating, trouble remembering and following directions.  Tr. 34-35.  She believes that her mental issues have worsened since 2009.  Tr. 36.  She has never thought about taking any action to harm herself.  Tr. 32.  However, she stated that her anxiety and depression get a hold of her and she just sits there and cannot get motivated.  Tr. 36.  She stated that, about two or three days per week, she experiences bad days and, on those days, she cannot concentrate or focus and usually just goes back to bed.  Tr. 39.  Because of her anxiety, she generally tries to avoid other

12

people.  Tr. 37.  For example, when she was a nurse, she worked nights because it was quieter.
Tr. 37.  Although she tends to avoid others, she indicated that she does not fight with others.  Tr.
37.

She has been receiving treatment from a psychiatrist at the Nord Center for her mental
health issues for about seven years.  Tr. 39-40.  Since 2009, she sees her psychiatrist every three
months for prescription refills.[9]  Tr. 40.  She indicated that her current medication regimen
included Xanax, Zyprexa and Lexapro and she testified to having side effects of weight gain and
dry mouth.  Tr. 40.  In addition to seeing a psychiatrist at the Nord Center, Wheeler has a
counselor who helps her complete paperwork for various forms of assistance such as food
stamps.  Tr. 40-41.

### 2. Medical Expert's Testimony

Medical Expert Dr. Hershel Goren, M.D., testified at the hearing.  Tr. 44-50, 96.   Based
on his review of the record, he opined that Wheeler suffers from major depressive disorder and
generalized anxiety disorder.  Tr. 44-45.  He opined that Wheeler did not have a condition or
combination of conditions that would meet or equal a Listing.[10]  Tr. 45.

Dr. Goren indicated that Wheeler's impairments would cause two restrictions.  Tr. 45.
First, Dr. Goren opined that Wheeler would be limited to superficial interpersonal interaction
with supervisors, co-workers and the general public, thus excluding arbitration, negotiation,
confrontation, supervision of others, and being responsible for the health, safety and welfare of

---

[9] Wheeler also reported that, since 2009, there was a period of time during which she was seeing her psychiatrist
every two weeks to try to get her stabilized on her medication.  Tr. 40.

[10] The Listing of Impairments (commonly referred to as Listing or Listings) is found in 20 C.F.R. pt. 404, Subpt. P,
App. 1, and describes impairments for each of the major body systems that the Social Security Administration
considers to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age,
education, or work experience.  20 C.F.R. § 404.1525.

others.  Tr. 45.  Second, he opined that Wheeler would be precluded from high production

quotas, i.e., no assembly line work.  Tr. 45.

Dr. Goren reviewed and commented on medical source statements completed by Dr.

Christian, Plaintiff's treating physician.  Tr. 45-47.  He opined that Dr. Christian appeared to

have issued contradictory assessments.  Tr. 46-47.  Dr. Goren noted that, while Dr. Christian

opined that Wheeler was markedly limited in certain areas, Dr. Christian also assessed a GAF

score of 60, which is "no worse than moderately impaired."[11]  Tr. 47-48.

### 3.      Vocational Expert's Testimony

Vocational Expert Bruce Holderead ("VE") testified at the hearing.  Tr. 50-60.  The VE

described Wheeler's past work experience.  Tr. 51-52.  Wheeler's past work was as nurse was a

skilled medium exertional position that Wheeler performed at the heavy to very heavy exertional

level.  Tr. 51.  Her work as an aide in a group home was a semi-skilled medium exertional

position that she performed at the heavy, very heavy exertional level.  Tr. 51.  Her work as a

cashier-checker at a convenience store was a semi-skilled light exertional position.  Tr. 51.  Her

work as a greenhouse worker was an unskilled heavy exertional position.  Tr. 51-52.  The VE

indicated that there were some transferable skills from the skilled/semi-skilled positions.  Tr. 52.

The ALJ asked the VE to assume a hypothetical individual of the same age, education

and work experience as Wheeler with the following residual functional capacity ("RFC"): the

individual can lift/carry 50 pounds occasionally and 25 pounds frequently; can stand 6 out of 8

hours, sit 6 out of 8 hours and walk 6 out of 8 hours; has no limits on pushing, pulling or using

foot pedals; can never climb ladders, ropes or scaffolds (due to her medications); can frequently

balance, stoop, kneel, crouch or crawl; has no manipulative or visual deficits and no

---

[11] A GAF score between 51 and 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning.  *Id.*

14

communication deficits; should avoid high concentrations of smoke and fumes and unprotected heights; should do no complex tasks but can do simple and routine tasks that are low stress with no high production quotas, no piece ready work, no work involving arbitration, negotiation, or confrontation, supervision and interpersonal interaction with the general public, co-workers, and supervisors; and no responsibility for the health, safety, or welfare of another party.  Tr. 52-53. The VE testified that such an individual would be unable to perform any of Plaintiff's past relevant work but there would be other jobs that such an individual could perform, including dining room attendant – unskilled medium exertional job with 2,400 jobs in northeast Ohio, 8,000 jobs in Ohio, and 270,000 jobs in the national economy; linen room attendant – unskilled medium exertional job with 500 jobs in northeast Ohio, 1,600 jobs in Ohio, and 40,000 jobs in the national economy; and automobile detailer – unskilled medium exertional job with 800 jobs in northeast Ohio, 6,000 jobs in Ohio, and 165,000 jobs in the national economy.[12]  Tr. 54.

Plaintiff's attorney asked the VE whether his opinion would change if the hypothetical individual was unable to respond appropriately to supervisors, work pressures and changes in a routine work setting.  Tr. 55-56.  The VE indicated that, if such an individual would <u>never</u> be able to respond appropriately, then there would be no work available to such an individual.  Tr. 56.  Plaintiff's counsel then asked the VE whether his opinion would change if the individual was unable to respond appropriately to supervisors, work pressures and changes in a routine work setting on average two to three times per week.  Tr. 57.  The VE stated that there would also be no work available to such an individual.  Tr. 57-58.  In response to Plaintiff's counsel's questions about what, if any, impact Plaintiff being 55 years of age would have on his opinion

---

[12] The VE noted that, while an automobile detailer would use some products, those products would be only of household strength and there would be no concentrated fumes involved in the job.  Tr. 54.

regarding the availability of jobs, the VE stated that, because the positions were unskilled

positions, he did not think age would be a factor and, if it was, it would only be small.  Tr. 58-60.

### III. Standard for Disability

Under the Act, 42 U.S.C § 423(a), eligibility for benefit payments depends on the

existence of a disability.  "Disability" is defined as the "inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment which

can be expected to result in death or which has lasted or can be expected to last for a continuous

period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Furthermore:

> [A]n individual shall be determined to be under a disability only if his physical or
> mental impairment or impairments are of such severity that he is not only unable
> to do his previous work but cannot, considering his age, education, and work
> experience, engage in any other kind of substantial gainful work which exists in
> the national economy . . . .

42 U.S.C. § 423(d)(2).

In making a determination as to disability under this definition, an ALJ is required to

follow a five-step sequential analysis set out in agency regulations.  The five steps can be

summarized as follows:

1. If the claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must
   be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity, is suffering from a
   severe impairment that has lasted or is expected to last for a continuous
   period of at least twelve months, and his impairment meets or equals a
   listed impairment, claimant is presumed disabled without further inquiry.

4. If the impairment does not meet or equal a listed impairment, the ALJ
   must assess the claimant's residual functional capacity and use it to
   determine if claimant's impairment prevents him from doing past relevant
   work.  If claimant's impairment does not prevent him from doing his past
   relevant work, he is not disabled.

5.    If claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520, 416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42, 96 L. Ed. 2d 119, 107 S. Ct. 2287 (1987).  Under this sequential analysis, the claimant has the burden of proof at Steps One through Four.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to establish whether the claimant has the Residual Functional Capacity ("RFC") and vocational factors to perform work available in the national economy.  *Id.*

## IV. The ALJ's Decision

In his September 1, 2011, decision, the ALJ made the following findings:

1.    Wheeler met the insured status requirements through December 31, 2013. Tr. 13.

2.    Wheeler has not engaged in substantial gainful activity since April 21, 2009, the alleged onset date. Tr. 13-14.

3.    Wheeler has severe impairments of major depressive disorder (bi-polar disorder) and anxiety disorder.  Tr. 14.

4.    Wheeler does not have an impairment or combination of impairments that meets or medically equals a Listing. Tr. 14-15.

5.    Wheeler has the RFC to perform medium work with the following limitations: occasional ramps or stairs; never ladders, ropes or scaffolds due to medications; frequently balance, stoop, kneel, crouch, or crawl; avoid high concentrations of smoke or fumes and unprotected heights; no complex tasks but can do simple, routine tasks, low stress work, no high production quotas/piece rate work, no work involving arbitration, confrontation, or negotiation, superficial interactions with the public, co-workers, or supervisors, no supervision, and no responsibility for the health, safety, or welfare of others.  Tr. 15-19.

6.    Wheeler is unable to perform her past relevant work.  Tr. 20.

7.     Wheeler was born on November 12, 1955, and was 53 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date.  Tr. 20.  Wheeler subsequently changed age category to advanced age.  Tr. 20.

8.     Wheeler has at least a high school education and is able to communicate in English.  Tr. 20.

9.     Wheeler acquired skills from her past relevant work.  Tr. 20.

10.    Considering Wheeler's age, education, work experience and RFC, and her transferable job skills, there are jobs available in significant numbers in the national economy that Wheeler can perform including dining room attendant, linen room attendant, and automobile detailer.  Tr. 20-21.

Based on the foregoing, the ALJ determined that Wheeler had not been under a disability from April 21, 2009, through the date of the decision.  Tr. 21.

## V. Parties' Arguments

### A.     Plaintiff's Arguments

Wheeler argues that the ALJ's decision that she is not disabled is not supported by substantial evidence because the ALJ erred by not providing controlling weight to her treating psychiatrist Dr. Christian's opinions.  Doc. 13, pp. 12-16.  She requests that the Court find that Dr. Christian's opinions were entitled to controlling weight, reverse the Commissioner's decision and enter a finding of disability.  Doc. 13, p. 16.

### B.     Defendant's Arguments

The Commissioner argues that the ALJ gave appropriate weight to the opinion evidence and Plaintiff's appeal is therefore without merit.  Doc. 14, pp. 13-19.

## VI. Law & Analysis

### A.     Standard of Review

A reviewing court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact

unsupported by substantial evidence in the record.  42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003).  "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992).  A court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

**B.    The ALJ properly evaluated and weighed the opinions of Plaintiff's treating psychiatrist.**

Plaintiff's sole argument is that the ALJ erred in not providing controlling weight to the opinions of Dr. Christian.[13]  Under the treating physician rule, "[a]n ALJ must give the opinion of a treating source controlling weight if he finds the opinion well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the case record." Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2).  If an ALJ decides to give a treating source's opinion less than controlling weight, he must give "good reasons" for doing so that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight.  *Wilson*, 378 F.3d at 544.  In deciding the weight given, the ALJ must consider factors such as (1) the length of the treatment relationship and the frequency of the examination, (2) the nature and extent of the treatment relationship, (3) the supportability of the opinion, (4) the consistency of the opinion with the record as a whole, (5) the specialization of the source, and (6) any other factors that tend to support or contradict the

---

[13]Plaintiff did not dispute the Commissioner's statement that Plaintiff's sole argument on appeal is that the ALJ improperly discounted Dr. Christian's opinions.  Doc. 14, p. 14.  Thus, to the extent that Plaintiff has attempted to present other arguments those arguments are waived. *See McPherson v. Kelsey*, 125 F.3d 989, 996 (6th Cir. 1997) (agreeing that "[i]t is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (citations omitted).

opinion.  *Bowen v. Comm'r of Soc Sec.*, 478 F.3d 742, 747 (6th Cir. 2007); 20 C.F.R. §§ 404.1527(c).  However, while an ALJ"s decision must include "good reasons" for the weight provided, the ALJ is not obliged to provide "an exhaustive factor-by-factor analysis."  *See Francis v. Comm'r of Soc. Sec.*, 414 Fed. Appx. 802, 804 (6th Cir. 2011).

The ALJ sufficiently explained how he considered and weighed Dr. Christian's opinions. He stated "[a]lthough I would normally give more weight to the claimant's treating physician, in this case Ms. Wheeler's treating physician provided so many contradictory opinions that are not supported by the record or even her own findings, that I am only able to assign less weight to the various opinions." Tr. 18.  The ALJ provided good reasons for his conclusion to assign less weight to Dr. Christian's opinions and, as shown below, the ALJ addressed each of Dr. Christian's opinions and his explanation for discounting the various opinions is sufficiently specific to make clear to this reviewing Court his reasons for doing so.  Tr. 18-19.

First, because Dr. Christian, in her August 28, 2009, opinion assessed Plaintiff as being alert, oriented, coherent, relevant, well groomed, and as not having any psychotic symptoms, he assigned less weight to her August 28, 2009, opinion that Wheeler was unemployable, needed constant reassurances, had limited insight and judgment, was unable to concentrate or focus, was quite unstable at the time, and that her anxiety inhibited her daily activities. Tr. 18.  The ALJ's decision to give less weight to the August 28, 2009, opinions based on inconsistencies between her opinions is sufficiently explained and supported by the evidence.  Tr. 18-19, 312-314.

Second, when the ALJ concluded that Dr. Christian's April 6, 2010, opinion that Wheeler is impaired in her ability to maintain attention and sustain concentration, cannot socially interact when she is ill and could not work well in any setting was entitled to less weight he considered the fact that Dr. Christian provided that opinion despite noting that Wheeler was well groomed;

20

her flow of conversation and speech, mood and affect, orientation, cognitive functioning and insight and judgment were within normal limits; and she is no longer psychotic or has no thinking disorders.  Tr. 19.  The ALJ's decision to give less weight to the April 6, 2010, opinions based on inconsistencies is sufficiently explained and supported by the evidence.  Tr. 19, 283-285.

Third, although not a formal report or assessment of Plaintiff's functional abilities, the ALJ considered Dr. Christian's opinion, in her February 15, 2011, treatment notes, that Plaintiff could not work.  Tr. 19, 332.  He discounted this opinion because the only noted reason was that Plaintiff's symptoms "wax and wane."  Tr. 19, 332.  Further, as indicated in the February 15, 2011, treatment notes, although Plaintiff had reported a resurgence of voices, she also reported that the voices had stabilized once her medication was properly adjusted.  Tr. 332.  Because the treatment notes do not support a finding of a complete inability to work, the ALJ's decision to assign less weight to this opinion is sufficiently explained and supported by the evidence.  Tr. 19, 332.

Fourth, the ALJ considered Dr. Christian's February 16, 2011, opinion.[14]  Tr. 19, 322. The ALJ noted that, although Dr. Christian opined again that Wheeler was unemployable, she also indicated, in the same assessment, that Plaintiff was improving with medication and rated Plaintiff as not significantly limited in several ways.  Tr. 19, 322.  Also, notwithstanding the notation that Plaintiff had improved with medication, Dr. Christian rated Plaintiff's ability to make simple work-related decisions as being more impaired than it had been on August 28, 2009, i.e., markedly impaired rather than only moderately impaired.  Tr. 312, 322.  The ALJ's

---

[14] Unlike the August 28, 2009, assessment there was no mental status exam included with the February 16, 2011, Assessment.  Tr. 312, 322.

decision to provide less weight to the February 16, 2011, opinion of Dr. Christian is sufficiently explained and supported by the evidence.  Tr.  19, 322.

Fifth, the ALJ considered Dr. Christian's medical source statement of May 20, 2011.  Tr. 19, 394-396, 397-399.  The ALJ gave less weight to Dr. Christian's May 20, 2011, opinion that Wheeler has difficulty staying focused, makes mistakes due to anxiety and therefore has many extreme limitations in regard to work-related mental activities.  Tr. 19.  He based his decision on the fact that, in the same opinion, the ALJ assigned Plaintiff a very high GAF score of 80.  Tr. 19, 394-396.   A GAF score in the range of 71 to 80 indicates that, "[i]f symptoms are present, they are transient and expectable reactions to psychological stressors (e.g., difficulty concentrating after family argument); no more than slight impairment in social, occupational, or school functioning (e.g., temporarily falling behind in schoolwork)." DSM-IV-TR, at 34.  Thus, the ALJ's reason for discounting Dr. Christian's extreme limitations was a good reason that is sufficiently explained and supported by the evidence.  Tr. 19, 394-395.

Sixth, the ALJ considered Dr. Christian's July 6, 2011, medical source statement, which was dated approximately two months after the May 20, 2011, medical source statement and which was provided only 2 weeks prior to the administrative hearing.  Tr. 19, 394-396, 397-399. In the July 6, 2011, medical source statement, Dr. Christian assessed a GAF score of 60, rather than the earlier higher score of 80, and indicated that Plaintiff was now having auditory hallucinations and mood swings.  Tr. 19, 397-399.  Based on the timing of the opinion, which contained additional symptoms and described a more functionally limited claimant than the report of two months earlier, the ALJ gave less weight to Dr. Christian's July 6, 2011, opinion. The ALJ's conclusion in this regard is sufficiently explained and supported by the evidence. Tr. 19, 394-396, 397-399.

As acknowledged by Plaintiff, Dr. Christian provided no explanation for the change from her May 20, 2011, opinion to her July 6, 2011, opinion. Doc. 13, p. 8. Plaintiff suggests that the change in Dr. Christian's opinion was based on the office visit of July 5, 2011, the day prior to completion of the later medical source statement, and the corresponding notes from that visit. Doc. 13, p. 8. However, while the July 5, 2011, office notes indicated that Plaintiff experienced anxiety attacks, those anxiety attacks were associated with a specific event, her daughter's graduation. Tr. 400. Further, even though Plaintiff reported having anxiety about her daughter's graduation, she attended the graduation, interacted with her ex-husband and his family, and there were no problems. Tr. 400. Also, during the July 5, 2011, visit, Wheeler reported no mood swings or delusional thinking and her mood and affect during the July 5, 2011, visit was euthymic/full. Tr. 400. Based on a review of the July 5, 2011, treatment notes, and the fact that Dr. Christian did not fully explain the change in her opinion, the undersigned finds that Plaintiff's argument that the July 5, 2011, office visit caused Dr. Christian to change her opinion from May 20, 2011, to find even greater impairments than she had only two months prior is unpersuasive.

In addition to clearly explaining his reasons for discounting Dr. Christian's opinions, the ALJ considered the opinion of medical expert Dr. Goren that there was nothing in Dr. Christian's opinions from which it could be determined how severe Wheeler's medical problems were. Tr. 19, 46. Further, the ALJ considered the fact that, like the ALJ, Dr. Goren found that Dr. Christian had offered contradictory opinions. Tr. 19, 46. For example, the medical expert indicated that, Dr. Christian contradicted herself when she said that Wheeler is extremely limited but assigned a GAF of 60 (which is no more than moderately impaired) and said that Wheeler would not need a representative payee if granted benefits. Tr. 19, 46-47, 397-399.

23

For the reasons set forth herein, the undersigned finds that the ALJ properly considered Wheeler's treating psychiatrist's opinions, gave good reasons for not providing controlling weight to them, sufficiently explained those reasons, and those reasons are supported by the record.[15]  Accordingly, the undersigned finds that Plaintiff's argument is without merit and the Commissioner's decision of no disability is supported by substantial evidence.

### VII. Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends that the Commissioner's decision be **AFFIRMED**.

Dated:   January 22, 2013

Kathleen B. Burke
United States Magistrate Judge

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

---

[15] As indicated, Plaintiff's sole argument for reversal is that the ALJ erred in not providing controlling weight to Plaintiff's treating psychiatrist's opinions.  Although the Court has concluded that Plaintiff has waived any other arguments, the Court notes that, to the extent that Plaintiff argues that the ALJ's decision is not supported by substantial evidence because it was not based on consideration of the record as a whole (Doc. 13, p. 2, p. 15), a review of the ALJ's decision demonstrates that, in reaching his conclusion that Plaintiff is not disabled, the ALJ thoroughly considered and analyzed the evidence, including but not limited to treatment records, other medical opinions, lay witness statements, Wheeler's own statements and her daily activities.  Thus, any claim by Plaintiff that this case should be reversed because the ALJ did not fully consider the whole record is also without merit.